ROY REKOSH *et al.*, Plaintiffs-Appellants, v. JUNE PARKS *et al.*, Defendants-Appellees.

Second District   No. 2—99—0928

Opinion filed September 1, 2000.

Robert E. Jones, Kathleen R. Ryding, and Mark S. Bishop, all of Huck, Bouma, Martin, Jones & Bradshaw, P.C., of Wheaton, for appellants.

Thomas C. Hunt and Marshall J. Subach, both of Hunt, Kaiser, Bush & Aranda, Ltd., of Bensenville, for appellee June Parks.

John J. Pcolinski, Jr., of Guerard, Kalina & Butkus, of Wheaton, for appellee Arlington Cemetery, Inc.

Brian P. Shaughnessy and Michelle J. Rozovics, both of Cremer, Kopon, Shaughnessy & Spina, L.L.C., of Chicago, for appellee Geils Funeral Home.

JUSTICE RAPP delivered the opinion of the court:

Plaintiffs, Roy Rekosh, Thomas Rekosh, David Rekosh, and Ronald Rekosh, appeal from the trial court's order granting the motions to dismiss of defendants, June Parks; Arlington Cemetery, Inc., d/b/a Elm Lawn Cemetery Corporation (Cemetery); and Geils Funeral Home (Funeral Home). Plaintiffs contend that the trial court erred in (1) dismissing their claim for negligent infliction of emotional distress; (2) dismissing their claim for intentional infliction of emotional distress; (3) dismissing their claim for interference with the right of the next of kin to possession and preservation of the body of the deceased; (4) failing to recognize an implied private cause of action under the Crematory Regulation Act (Act) (410 ILCS 18/1 *et seq.* (West 1998)); and (5) failing to recognize an implied private cause of action under the Funeral Directors and Embalmers Licensing Code (Code) (225 ILCS 41/1—1 *et seq.* (West 1998)).

## I. FACTS AND PROCEDURAL HISTORY

This case comes before us after the trial court granted defendants' motions to dismiss. In determining whether to grant a motion to dismiss, a court must accept as true the well-pleaded allegations of fact contained in the complaint and construe all reasonable inferences therefrom in favor of the plaintiff. See *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 388 (1999).

In plaintiffs' third amended complaint (complaint), plaintiffs charged all three defendants with negligent infliction of emotional distress in count I; intentional infliction of emotional distress in count II; and interference with the right of the next of kin to possession and preservation of the body of the deceased in count III. Plaintiffs also claimed a violation of the Crematory Regulation Act by the Cemetery

in count IV, and a violation of the Funeral Directors and Embalmers Licensing Code by the Funeral Home in count V.

Plaintiffs' complaint stated that plaintiffs are the sons of Eugene H. Rekosh, who died October 13, 1997. Defendant June Parks was married to Eugene for 17 years until they were divorced on December 12, 1996, and is not the mother of plaintiffs. On April 8, 1997, Eugene purportedly executed a will, which disinherited plaintiffs, named June Parks as executor, and bequeathed all of his property to her. Plaintiffs claimed to have enjoyed a warm, affectionate, and natural relationship with their father prior to his death.

Plaintiffs alleged that, shortly after Eugene's death, June Parks met with agents of the Funeral Home and the Cemetery and falsely represented that she was the spouse of Eugene Rekosh. June Parks made arrangements for Eugene's body to be cremated and for his remains to be returned to her. Neither the Funeral Home nor the Cemetery properly secured a cremation authorization form as required by the Act.

The Act provides that a crematory shall not cremate human remains until it has received, *inter alia*, a cremation authorization form signed by an authorizing agent. 410 ILCS 18/20(a)(1) (West 1998). The Act lists the persons who may serve as the authorizing agent, which include, in order of priority, the surviving spouse, unless the deceased authorized his or her own cremation pursuant to the Act or the executor is acting pursuant to decedent's written directions; the decedent's surviving adult children; the decedent's surviving parent; and the next of kin under the laws of descent and distribution. 410 ILCS 18/15(a) (West 1998).

The cremation authorization form is missing information required by the Act, including the relationship of the authorizing agent to the deceased; written confirmation by the authorizing agent that he has notified the other adult children; the manner in which the final disposition of the cremated remains is to take place, if known; and the name of the person authorized to receive the cremated remains. The cremation authorization form contains the signature of plaintiff Ronald Rekosh as authorizing agent. Ronald Rekosh's purported signature was witnessed by a Mr. Geils, an agent or employee of the Funeral Home. Plaintiffs claim that Ronald Rekosh did not sign the cremation authorization form. After the cremation, either the Funeral Home or the Cemetery gave June Parks the remains, which she dumped in her backyard without notifying plaintiffs or securing their permission. Plaintiffs allege that they had intended to bury their father's body and were violently opposed to cremation. As a result of defendants' actions, plaintiffs claim to have been deprived of their right to make

burial decisions and grieve their father's death. Plaintiffs claim severe and permanent emotional harm and injury.

Defendants filed motions to dismiss. The trial court granted defendants' motions to dismiss plaintiffs' complaint with prejudice. Plaintiffs timely appealed.

## II. DISCUSSION

■ We begin by noting that the trial court's order states no basis for the dismissal of plaintiffs' claims, and transcripts of the proceedings were not provided. An order that sustains a motion to dismiss without specifying the grounds upon which it is based places before the reviewing court each issue raised by the motion. *Mid-Town Petroleum, Inc. v. Dine*, 72 Ill. App. 3d 296, 298-99 (1979).

■ Although brought pursuant to three different sections of the Code of Civil Procedure, defendants' motions to dismiss were all based upon plaintiffs' failure to state causes of action upon which relief can be granted, which are properly brought pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)). We must examine whether the allegations of the complaint, when viewed in a light most favorable to the plaintiffs, are sufficient to state a cause of action upon which relief can be granted. *Abbasi*, 187 Ill. 2d at 391. A motion brought under section 2—615 admits as true all well-pleaded facts, but not conclusions of law or factual conclusions that are unsupported by allegations of specific facts. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 16 (1995). A cause of action will not be dismissed on the pleadings unless it clearly appears that there is no set of facts that can be proved that will entitle the plaintiff to recover. *Abbasi*, 187 Ill. 2d at 391. Our review of an order of dismissal is *de novo*. *Abbasi*, 187 Ill. 2d at 391.

### A. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ Prior to 1983, the "impact rule" was applied in cases of negligent infliction of emotional distress. A plaintiff could recover for the physical injury that developed because of emotional distress only if he received either physical injury or some impact to his person at the occurrence of the negligent conduct that caused the emotional distress. *Braun v. Craven*, 175 Ill. 401, 413 (1898). In *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 555 (1983), our supreme court recognized a limited exception to the "impact rule" known as the "zone of physical danger rule." The "zone of physical danger rule" requires that the bystander must have been in such proximity to the accident that injured the direct victim that there was a high risk to himself of physical impact. *Rickey*, 98 Ill. 2d at 555. The bystander must also show physical injury or illness resulting from the emotional distress caused by the defendant's negligence. *Rickey*, 98 Ill. 2d at 555.

Plaintiffs concede that the allegations in count I are insufficient to state a cause of action for negligent infliction of emotional distress. However, plaintiffs urge this court to expand the recovery available for this tort under the special circumstances of the negligent mishandling of a corpse by carving out an exception to the "impact rule" of *Braun* and the "zone of physical danger rule" announced in *Rickey*.

We decline this opportunity to expand upon present law and conclude that plaintiffs' cause of action for negligent infliction of emotional distress is foreclosed by our supreme court's decisions in *Braun* and *Rickey*. See *Courtney v. St. Joseph Hospital*, 149 Ill. App. 3d 397, 403 (1986). Therefore, count I of plaintiffs' complaint was properly dismissed as to each defendant for failure to state a cause of action.

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The next claim brought against all three defendants and dismissed by the trial court was for intentional infliction of emotional distress. In order to state a cause of action for this tort, a party must allege facts to establish that (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994).

Plaintiffs contend that they have made sufficient factual allegations to state a cause of action for intentional infliction of emotional distress. Defendants argue that plaintiffs' allegations are merely conclusions of law unsupported by facts. On review, we decide whether plaintiffs' complaint alleges sufficient facts to support each element of the cause of action as to each defendant. *Lagen*, 274 Ill. App. 3d at 16.

### 1. Extreme and Outrageous Conduct

■ Liability for intentional infliction of emotional distress will exist only if defendant's conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976). Whether conduct is extreme and outrageous is judged on an objective standard based on all of the facts and circumstances of a particular case. *Doe*, 161 Ill. 2d at 392. We will examine each defendant's alleged conduct separately.

### a. June Parks

■ We first address the outrageousness of June Parks's alleged conduct. A factor relevant in determining whether conduct is extreme or outrageous is the defendant's awareness that the plaintiff is

particularly susceptible to emotional distress because of a physical or mental condition or peculiarity. *Doe,* 161 Ill. 2d at 393. June Parks was aware that her former husband had four sons and, at least as alleged, she knew plaintiffs had a warm and affectionate relationship with their father. It may be inferred that June Parks was aware that plaintiffs were particularly susceptible to the emotional distress that would result from the cremation of their father's body and the disposal of his remains without their knowledge, consent, or participation.

As plaintiffs point out, "[c]remation of a corpse against the wishes of the next of kin, if done maliciously, out of ill will or spite, likewise could be conduct sufficiently outrageous to support that element of the tort." *Kelso v. Watson,* 204 Ill. App. 3d 727, 730 (1990). We believe that a reasonable person who enjoyed a warm, affectionate, and natural relationship with a parent would resent someone who, upon that parent's death, by means of a forgery, illegally cremated the body and disposed of the remains in a backyard without his knowledge or consent. We believe that the alleged conduct may reasonably be regarded as extreme and outrageous, and therefore we find that the first element of the cause of action against defendant June Parks is satisfied.

### b. Funeral Home

We next address the outrageousness of the Funeral Home's alleged conduct. Plaintiffs allege that the Funeral Home's extreme and outrageous conduct consisted of its failure to secure the proper cremation authorization required by statute, witnessing a forged signature on the cremation authorization form, and releasing the decedent's remains to June Parks, a person the Funeral Home knew was not authorized to receive the remains.

It can be inferred that, at some point during the transaction with June Parks, the Funeral Home became aware that she was not the decedent's wife because she could not serve as the authorizing agent for the cremation. Knowing that, the Funeral Home, by its agent, is alleged to have witnessed the purported signature of plaintiff Ronald Rekosh, who did not sign that document. When the Funeral Home witnessed the signature of Ronald Rekosh, it became aware that there was someone with the same last name as the decedent who could legally authorize the cremation and who therefore had a right and a duty with respect to the disposition of the body. Knowing these things, the Funeral Home proceeded with the cremation and gave the remains to June Parks.

The Funeral Home, at a minimum, was aware that June Parks

was not able to serve as authorizing agent and that there was at least one person, Ronald Rekosh, who could. Surely, the Funeral Home understands and appreciates that the next of kin of the decedent are particularly susceptible to emotional distress. A funeral home's facilitation of a cremation that is not legally authorized, knowing that there are next of kin who are potentially unaware of the death or the arrangements and perhaps have objections, may reasonably be regarded as conduct so outrageous in character and extreme in degree as to go beyond all possible bounds of decency. We find that there are sufficient facts alleged to establish extreme and outrageous conduct by the Funeral Home, and therefore the first element of the cause of action against defendant Funeral Home is satisfied.

### c. Cemetery

The alleged extreme and outrageous conduct on the part of defendant Cemetery is the cremation of the decedent's body in spite of an incomplete and deficient cremation authorization form and then the conveying of the remains to June Parks, an unauthorized person. We find that the allegation of extreme and outrageous conduct by the Cemetery is conclusional. Unlike the allegations against June Parks and the Funeral Home, the Cemetery's alleged conduct, although technically illegal, was not extreme and outrageous. The cremation authorization form does not on its face suggest that there was any lack of authority for the cremation of the decedent's body. In fact, it is signed by Ronald Rekosh, a man with the same last name as the decedent, and is witnessed by an employee of the Funeral Home that was handling the arrangements. While the allegations against June Parks and the Funeral Home show a knowledge that the cremation was not authorized and a blatant disregard for plaintiffs' rights and duties, there is no allegation that the Cemetery was aware that the cremation was unauthorized. Accordingly, the trial court did not err in dismissing count II of plaintiffs' complaint against defendant Cemetery.

### 2. Intent

We now examine the alleged intent of defendants June Parks and the Funeral Home. The second element required to state a claim for the intentional infliction of emotional distress is that the defendant either intended that his or her conduct should inflict severe emotional distress or knew there was a high probability that his or her conduct would cause severe emotional distress. *Doe*, 161 Ill. 2d at 392. This element has been sufficiently pleaded in plaintiffs' complaint against defendants June Parks and the Funeral Home. The complaint's allegations as to defendants June Parks and the Funeral Home demonstrate

their knowledge that there was a high probability that their conduct would cause plaintiffs severe emotional distress.

### 3. Severe Emotional Distress

The third element that must be alleged is that defendants' conduct in fact caused plaintiffs severe emotional distress. The emotional distress suffered by the plaintiff must be such that no reasonable man could be expected to endure it. *Public Finance Corp.*, 66 Ill. 2d at 90. " '[T]he extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed.' " *Doe*, 161 Ill. 2d at 396, quoting Restatement (Second) of Torts § 46, Comment *j*, at 78 (1965). Thus, the more extreme and outrageous the conduct, the more likely the occurrence of severe emotional distress.

June Parks and the Funeral Home are alleged to have caused the cremation of the body and a final disposition of the remains, to the exclusion of plaintiffs, who had the right and duty to make final disposition determinations. In so doing, defendants are alleged to have deprived plaintiffs of the opportunity to grieve their father's death by participating in making arrangements and choosing his final resting place. Plaintiffs allege that this was accomplished through the forgery of Ronald Rekosh's signature on the cremation authorization form, which was witnessed by the Funeral Home. It is the alleged secretion of the cremation and subsequent disposition of the remains, in addition to the undesired method, that make the conduct of defendants in this case extreme and outrageous. The alleged extreme and outrageous conduct of June Parks and the Funeral Home indicates that the allegation of emotional distress is not fictitious and goes far to explain why no reasonable person could expect to endure the degree of emotional distress inflicted upon them. We conclude that the allegation of severe emotional distress resulting from the conduct of June Parks and the Funeral Home, when viewed in a light most favorable to the plaintiffs, is sufficiently supported by factual allegations.

We have determined that all three elements of intentional infliction of emotional distress have been sufficiently pleaded by plaintiffs against defendants June Parks and the Funeral Home. We therefore hold that the trial court erred in dismissing count II of plaintiffs' complaint against June Parks and the Funeral Home, but that it properly dismissed count II as to the Cemetery.

## C. INTERFERENCE WITH THE RIGHT OF THE NEXT OF KIN TO POSSESS AND PRESERVE THE BODY OF THE DECEDENT

■ The third claim brought against each of the defendants, and dismissed by the trial court, was interference with the right of the

next of kin to possess and preserve the body of the decedent. While there is no property right, in the ordinary sense, in a dead body, the next of kin have a right to the possession of a decedent's remains in order to make appropriate disposition thereof, whether by burial or otherwise. *Leno v. St. Joseph Hospital*, 55 Ill. 2d 114, 117 (1973).

In the absence of a testamentary disposition, the right of possession of a dead body usually belongs to the surviving spouse or the next of kin. *People v. Harvey*, 286 Ill. 593, 601 (1919). In Illinois, this right has been construed to give the next of kin the right to determine the time, manner, and place of burial. *In re Estate of Medlen*, 286 Ill. App. 3d 860, 864 (1997). To state a cause of action based on the right of the next of kin to the possession and preservation of the body of a decedent, plaintiffs must demonstrate by specific facts that defendants' conduct was willful and wanton. *Kelso*, 204 Ill. App. 3d at 731.

■ Generally, willful and wanton conduct implies an act done intentionally and without regard to the rights of others. *Hearon v. City of Chicago*, 157 Ill. App. 3d 633, 637 (1987). Reckless conduct is the legal equivalent of willful and wanton conduct. *Hearon*, 157 Ill. App. 3d at 637. Whether conduct is willful and wanton is ultimately a question of fact for the jury; however, a court must first decide as a matter of law whether plaintiff has alleged sufficient facts such that a jury question is created. *Doe*, 161 Ill. 2d at 390.

Plaintiffs allege that defendant June Parks was divorced from the decedent at the time of his death and that therefore she had no right to possess the decedent's body. Plaintiffs also allege that they are the sons and surviving heirs of the decedent, presumably "next of kin" because they are most closely related by blood, and persons entitled to inherit from the decedent if he died intestate. See Black's Law Dictionary 1065 (7th ed. 1999). Thus, plaintiffs have alleged that, as the next of kin, they had the right to possess and preserve their father's body. Next, we must examine whether plaintiffs have alleged specific facts to demonstrate that each defendant's conduct was willful and wanton.

### 1. June Parks

■ June Parks argues that the trial court properly dismissed this claim because plaintiffs have not alleged that she knew she was interfering with plaintiffs' rights. We disagree.

Plaintiffs have alleged that June Parks told the Funeral Home and the Cemetery that she was the wife of the decedent at the time of his death, knowing that to be false. Plaintiffs allege that she then arranged for the cremation of the decedent's body and release of the remains to her, which she disposed of in her backyard without notifying plaintiffs or obtaining their permission.

Certainly, June Parks knew that her former husband of 17 years had four sons. We can reasonably infer from the allegations that June Parks was aware that plaintiffs, and not she, had the legal right and duty to determine the final disposition of the decedent's body. June Parks's false claim that she was decedent's wife is an allegation of fact demonstrating knowledge that she had no right or duty *vis-a-vis* the body. Further, June Parks's lack of authority to make burial decisions, as well as her awareness of plaintiffs' rights to do so, necessarily became apparent to her when she discovered the need for one of the plaintiffs' signatures on the cremation authorization form.

We find that plaintiffs' complaint contains sufficient factual allegations of willful and wanton conduct by June Parks to state a cause of action for interference with the next of kin's right to the possession and preservation of the body of the decedent. Accordingly, we hold that the trial court erred in dismissing count III of plaintiffs' complaint as to defendant June Parks.

### 2. Funeral Home

The Funeral Home argues that plaintiffs have not stated a cause of action for the interference with the right of the next of kin to the possession and preservation of the body of the decedent because they have titled count III of their complaint "wrongful disposition of body" and therefore have not pleaded the cause of action contemplated in *Kelso* and *Hearon*. The allegations of a complaint, not the name or title that is used by the plaintiff, define a cause of action. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 489 (1994). Thus, even if the title "wrongful disposition of body" is considered inappropriate for this cause of action, it is not fatal to plaintiffs' claim.

The Funeral Home also argues that plaintiffs' allegations do not rise to willful and wanton conduct. We disagree.

Plaintiffs allege that June Parks informed the Funeral Home that she was the widow of the decedent at the time of his death. This may have been the situation at the outset, but the facts pleaded allege that the Funeral Home became aware that June Parks was not the decedent's spouse at the time of death because she could not sign the cremation authorization form, at least not with her own name. As alleged, June Parks's lack of authority necessarily became clear to the Funeral Home when its agent witnessed the signature of Ronald Rekosh on the cremation authorization form without Ronald Rekosh signing in front of him. At that point, the Funeral Home must have known that June Parks had no legal right or duty *vis-a-vis* the body of the decedent or, presumably, she would have signed the authorization herself. Also at that point, the Funeral Home knew or should have

known that there was at least one next of kin, by the name of Ronald Rekosh, who had a right and duty to bury the decedent as he saw fit. To witness the cremation authorization form and allow the cremation to go forward in the face of that knowledge was willful and wanton conduct because it was done with conscious disregard for plaintiffs' rights. The conduct of the defendants in *Kelso* and *Hearon* can be distinguished from the conduct of the Funeral Home in this case.

In *Kelso* defendant mortuary and mortician cremated the decedent after mistakenly concluding the decedent had AIDS. *Kelso*, 204 Ill. App. 3d at 729. The court concluded that there was no factual support for the cause of action based on the right of the next of kin to the possession and preservation of the body of a decedent and affirmed the trial court's dismissal of the claim. *Kelso*, 204 Ill. App. 3d at 731. The court reasoned that, because there were no facts to support the allegation that defendant knew the decedent did not have AIDS, and no allegation that plaintiffs had made known to defendant their desires that decedent's body be interred and not cremated, the allegation that the defendant acted in conscious disregard for the rights of the next of kin was only a legal conclusion. *Kelso*, 204 Ill. App. 3d at 731.

In *Hearon*, plaintiff's husband was the victim of a stabbing. He was found by Chicago police officers, who took him to the hospital where he was pronounced dead. The police officers then transported the body to the medical examiner's office where an autopsy was performed. Approximately 30 days later, the body, which remained unclaimed, was transferred to a cemetery for burial. Plaintiff was not contacted regarding either the death of her husband or the subsequent disposition of the body. Plaintiff learned of her husband's death four months later when a bill collector from the hospital contacted her regarding emergency room charges. *Hearon*, 157 Ill. App. 3d at 634. Plaintiff brought suit against, *inter alia*, the City of Chicago, based upon the intentional infliction of emotional distress and the interference with the next of kin's right to the possession and preservation of the body of the decedent. *Hearon*, 157 Ill. App. 3d at 634-35. In finding that the plaintiff had not stated a cause of action, the court stated that there was no indication in the complaint that the defendants' acts were done with any purpose to consciously disregard or invade the rights of the plaintiff. The court also stated that there was no allegation demonstrating that the unfortunate failure to notify the plaintiff of the disposition of her husband's body was due to anything more than inadvertence. *Hearon*, 157 Ill. App. 3d at 637-38.

Here, in contrast to *Kelso* and *Hearon*, the alleged conduct of defendant Funeral Home was not due to a mistake or inadvertence. It was in conscious disregard of the rights of plaintiff Ronald Rekosh,

because the Funeral Home knew that he existed and could serve as the authorizing agent for the cremation and, therefore, had a right and a duty with respect to the body of the decedent. Knowing this, the Funeral Home's agent witnessed a cremation authorization form he did not see Ronald Rekosh sign. These factual allegations are sufficient to support willful and wanton conduct, at least at the pleading stage, and therefore plaintiffs have stated this cause of action as to the Funeral Home. Accordingly, the trial court erred in dismissing count III of plaintiffs' complaint against defendant Funeral Home.

### 3. Cemetery

Defendant Cemetery is alleged to have engaged in willful and wanton conduct in cremating the decedent's body in reliance upon an incomplete and deficient cremation authorization form. The Cemetery argues that plaintiffs have not adequately alleged willful and wanton behavior on the Cemetery's part.

We have examined the cremation authorization form and, although it is incomplete, it does not on its face suggest that there was any lack of authority for the cremation of the decedent's body. The allegation of willful and wanton conduct by the Cemetery is conclusional because there is no factual allegation in the complaint to suggest that the Cemetery's actions were in conscious disregard for the right of another to possess and preserve the body of the decedent for burial. Accordingly, the trial court did not err in dismissing count III of plaintiffs' complaint against defendant Cemetery.

## D. VIOLATION OF THE CREMATORY REGULATION ACT

Plaintiffs alleged that defendant Cemetery cremated the decedent's body based on an incomplete cremation authorization form and therefore violated the Crematory Regulation Act (410 ILCS 18/1 *et seq.* (West 1998)). Plaintiffs contend that the trial court erred in dismissing their claim against the Cemetery for violation of the Act because the Act implies a private cause of action, which plaintiffs have sufficiently alleged. Plaintiffs also allege that, as a direct and proximate cause of the Cemetery's actions, they have suffered emotional distress. For purposes of this appeal, we must accept these well-pleaded facts as true. *Abbasi,* 187 Ill. 2d at 388. The Cemetery argues that there is no implied right of action under the Crematory Regulation Act.

This is a case of first impression in Illinois. We are aware of no prior cases where a private right of action under the Act was examined. We find that the Act expressly provides a private right of action.

The construction of a statute is a question of law that is independently determined by a reviewing court. *Milledgeville Community*

*Credit Union v. Corn*, 307 Ill. App. 3d 8, 12 (1999). Statutory interpretation involves giving effect to the underlying intent of the legislature. *In re Marriage of Brackett*, 309 Ill. App. 3d 329, 343 (1999). However, when the statutory language is clear and unambiguous, there is no need to turn to extrinsic construction aids. *Bracket*, 309 Ill. App. 3d at 343.

■ Accordingly, we turn to the provisions in the Act that impute liability to a crematory authority that violates the Act. Section 20 of the Act provides:

"There shall be no liability for a crematory authority that cremates human remains according to an authorization, or that releases or disposes of the cremated remains according to an authorization, except for a crematory authority's gross negligence, provided that the crematory authority performs its functions in compliance with this Act." 410 ILCS 18/20(d) (West 1998).

Also, section 45 of the Act provides:

"A crematory authority that has received an executed cremation authorization form that complies with paragraph (1) of subsection (a) of Section 20 and has received any additional documentation required by Section 20 shall not be liable for cremating the human remains designated by the cremation authorization form if the cremation is performed in accordance with this Act." 410 ILCS 18/45(a) (West 1998).

Construing the plain meaning of the Act, we find that the Act clearly and unambiguously creates a private right of action. Plaintiffs have alleged specific violations of the Act and that, as a result, they have suffered severe emotional distress. These allegations are sufficient to state a cause of action under the Act. Accordingly, we hold that the trial court erred in dismissing count IV of plaintiffs' complaint.

## E. FUNERAL DIRECTORS AND EMBALMERS LICENSING CODE

Plaintiffs contend that the trial court erred in failing to recognize an implied cause of action for the violation of the Funeral Directors and Embalmers Licensing Code (225 ILCS 41/1—1 *et seq.* (West 1998)). Plaintiffs allege that as a direct and proximate result of the Funeral Home's violation of the Code, they have suffered severe emotional distress. For purposes of this appeal, we must accept these well-pleaded facts as true. *Abbasi*, 187 Ill. 2d at 388.

■ The Code does not expressly grant survivors of a decedent the right to seek damages for the violation of the Act's provisions. "The lack of such explicit language, however, is not necessarily dispositive." *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999). A court may determine that a private right of action is implied by a stat-

ute. *Fisher*, 188 Ill. 2d at 460. There are four factors to be considered in determining if a private right of action may be implied from a statute. Implication of a private right of action is appropriate if (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statue; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Fisher*, 188 Ill. 2d at 460.

This also is an issue of first impression in Illinois. We are aware of no prior case where the implication of a private right of action by the Code was examined. In applying the four factors cited above, we conclude that the Code makes no such implication and that it is unnecessary to imply a private cause of action to provide an adequate remedy for violations of the Act.

The purpose for enacting the Code can be gleaned from the legislative intent section, which states:

"Legislative intent. The practice of funeral directing and embalming in the State of Illinois is declared to be a practice affecting the public health, safety and welfare and subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the preparation, care and final disposal of a deceased human body be attended with appropriate observance and understanding, having due regard and respect for the reverent care of the human body and for those bereaved and the overall spiritual dignity of man. It is further a matter of public interest that the practice of funeral directing and embalming as defined in this Code merit and receive the confidence of the public and that only qualified persons be authorized to practice funeral directing and embalming in the State of Illinois. This Code shall be liberally construed to best carry out these subjects and purposes." 225 ILCS 41/1—5 (West 1998).

The Code is a comprehensive statute designed to regulate the profession of funeral directing and embalming because doing so is in the interest of public health, safety, and welfare.

Our supreme court has implied a right of action under a statute only where the statute would be ineffective, as a practical matter, unless a private right of action were implied. *Fisher*, 188 Ill. 2d at 464. While the protection of the bereaved survivors of the decedent is consistent with the general public interest purpose of the Code, it is unnecessary to imply a private right of action for the survivors of the decedent who have suffered emotional distress due to the violation of the Code in order to achieve that purpose. The Code provides sanctions and remedies to achieve the Code's goal.

The Department of Professional Regulation (Department) is given the power to hold hearings to determine whether a licensee is guilty of a violation of the Code. 225 ILCS 41/15—15 (West 1998). All final administrative decisions of the Department are subject to judicial review. 225 ILCS 41/15—35 (West 1998). The Code provides for the suspension or revocation of a license and other disciplinary action, including fines not to exceed $1,000 for each violation. 225 ILCS 41/15—75 (West 1998). In addition, the Code mandates regular inspections of all funeral establishments by the Department to determine compliance with provisions of the Code. 225 ILCS 41/15—15 (West 1998). The Department is given the power to investigate any person holding or claiming to hold a license under the Code. 225 ILCS 41/15—15 (West 1998). The Code also provides a mechanism under which any person who suspects a violation of the Code can require an investigation by the Department. 225 ILCS 41/15—15 (West 1998).

We cannot say that the Code's sanctions and remedies for violations are so deficient that it is necessary to imply a private right of action for the survivors of a decedent who have suffered emotional distress due to the violation of the Code. We therefore hold that the Funeral Directors and Embalmers Licensing Code does not imply a private right of action for the survivors of a decedent who have suffered emotional distress due to the violation of the Code. We therefore hold that the trial court correctly dismissed count V of plaintiffs' complaint.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of count I of plaintiffs' complaint as to all defendants. We reverse the trial court's dismissal of count II of plaintiffs' complaint against June Parks and the Funeral Home and affirm the dismissal of count II against the Cemetery. We reverse the trial court's dismissal of count III of plaintiffs' complaint against June Parks and the Funeral Home and affirm the dismissal of count III against the Cemetery. We find that the Crematory Regulation Act creates a private right of action, which plaintiffs have stated, and we therefore reverse the trial court's dismissal of count IV of plaintiffs' complaint. We find that the Funeral Directors and Embalmers Licensing Code does not imply a private right of action, and we therefore affirm the trial court's dismissal of count V of plaintiffs' complaint. Accordingly, we affirm in part and re-

verse in part the judgment of the trial court, and we remand the cause with respect to counts II, III, and IV for further proceedings.

Affirmed in part and reversed in part; cause remanded.

COLWELL and HUTCHINSON, JJ., concur.