2020 IL App (2d) 190627
No. 2-19-0627
Opinion filed December 21, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RAASHAN COLEY, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-L-480 |
| | ) | |
| BRADSHAW & RANGE FUNERAL HOME, | ) | |
| P.C., | ) | Honorable |
| | ) | David P. Brodsky, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices Jorgensen and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Raashan Coley (Coley), proceeding *pro se*, appeals the trial court's dismissal of his claim for negligent interference with his right to the possession of his deceased daughter's remains. Defendant, Bradshaw & Range Funeral Home, P.C. (Bradshaw), had moved to dismiss the claim, pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)), arguing that section 45 of the Disposition of Remains Act (the Remains Act) (755 ILCS 65/45 (West 2014)) shielded it from liability. On appeal, Coley argues that his claim should not have been dismissed, because Bradshaw failed to meet section 45's requirements. Coley is not challenging the outcome of the jury trial on his claims for intentional infliction of emotional distress and willful and wanton conduct. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Raashanai J. Coley (Raashanai) died intestate on September 5, 2014, after being struck in the stomach by her mother, Nicholette Lawrence, following a period of prolonged neglect and abuse. Bradshaw was the funeral establishment that handled Raashanai's remains and facilitated their transfer to the crematory. At the instruction of her maternal grandfather, Carlton North, Raashanai's body was cremated on September 26, 2014. The cremation was performed by Mt. Olivet Memorial Park Ltd. (Mt. Olivet). Coley did not learn of his daughter's death and cremation until October 9, 2014. Coley maintains that, as next of kin, he had the right to control the disposition of his daughter's remains.

¶ 4     On May 1, 2015, Coley filed in the circuit court of Lake County his first complaint, against Bradshaw and Mt. Olivet. Coley voluntarily dismissed this action on October 4, 2016, and refiled his case on June 28, 2017. On May 10, 2018, Coley filed an amended complaint, against Bradshaw only, alleging intentional infliction of emotional distress (count I), willful and wanton/reckless interference with the right to possess and preserve the body of the minor decedent (count II), and negligent interference with the right of the parent to possess and preserve the body of the minor decedent (count III).

¶ 5     The pertinent allegations of count III of Coley's amended complaint were as follows: (1) apart from Lawrence, who was charged with Raashanai's murder, Coley was Raashanai's only adult heir and next of kin; (2) Bradshaw did not attempt to contact Coley regarding the disposition of Raashanai's remains; (3) Bradshaw knew or should have known that Lawrence was charged with the murder of Raashanai and thus not entitled to control the disposition of Raashanai's remains; (4) Bradshaw had a duty not to interfere with Coley's right to possess his daughter's remains; (5) Bradshaw breached that duty when it failed to obtain Coley's authorization for the

cremation, secured and transmitted invalid authorization forms for the cremation, and transported or allowed the transportation of Raashanai's remains for cremation; and (6) these breaches caused Coley damages in the form of severe emotional distress, mental suffering, humiliation, and anguish.

¶ 6       Bradshaw moved to dismiss count III of Coley's amended complaint, pursuant to section 2-619(a)(9), arguing as follows: (1) between the time of Raashanai's death and her cremation, Coley was in Mexico, evading capture by United States law enforcement officials; (2) North told Bradshaw that he did not know the whereabouts of Coley or how to contact him; (3) Bradshaw received a release authorization (Release) from Lawrence dated September 23, 2014, authorizing North to arrange for the disposition of Raashanai's remains; and (4) on September 25, 2014, Bradshaw received two authorizations (Authorization Forms) from North for the cremation. One was an "Authorization for Removal of Decedent," which stated: "I (we) hereby represent that I am (we are) of the same and nearest degree of relationship to the deceased and/or are legally authorized or charged with the responsibility for such burial and/or other disposition." The other was a cremation authorization form, which stated: "There is another living persons [*sic*] (Nicholette Lawrence) who has the right to control the final disposition of the decedent but that person has provided, me (us) with written permission to arrange for the cremation of the decedent." Bradshaw argued that, because it relied on these representations from North, it could not be held liable under an ordinary negligence theory. In support, Bradshaw cited section 45 of the Remains Act, which states, "There shall be no liability for *** a funeral establishment that carries out *** the directions of any person who represents that the person is entitled to control the disposition of the decedent's remains." 755 ILCS 65/45 (West 2014).

¶ 7 Bradshaw's motion was supported by an affidavit from North, in which he stated that he was Raashanai's maternal grandfather and that he resided in Oregon. He said that he first learned of Raashanai's death on September 6, 2014. He learned from the Lake County Coroner's Office that the coroner was holding Raashanai's body and that an autopsy had been performed. Afterward, the body was placed in the coroner's morgue while the coroner waited for next of kin to claim the remains. Raashanai's body remained unclaimed at the morgue for at least three weeks, after which the coroner's office informed North that it would release Raashanai's remains to him.

¶ 8 The coroner's office recommended Bradshaw to North. North contacted Bradshaw's funeral director, Richard Bradshaw, who asked about Coley's whereabouts. North informed Richard Bradshaw that Coley had been incarcerated in various prisons for much of Raashanai's life, that it had been over a year since he had heard from Coley, and that he did not know where Coley or any of his immediate family lived or how to contact them. Richard Bradshaw informed North that, before Bradshaw would allow him to provide for the final disposition of Raashanai's body and for cremation, it would require a release from Lawrence transferring her rights to him. It was Lawrence's decision that Raashanai be cremated, and North agreed with her. North provided Bradshaw with the Release as well as the two Authorization Forms.

¶ 9 In response to Bradshaw's motion to dismiss, Coley argued that nothing in Illinois law gave a party the ability to transfer to another person his or her right to control a decedent's remains and, as such, the Release and the Authorization Forms were ineffective. Further, the Release itself was evidence that Bradshaw knew that Lawrence had been charged with Raashanai's murder and that it knew that Lawrence was disqualified from determining the disposition of the remains pursuant to section 20(b) of the Remains Act (755 ILCS 65/20(b) (West 2014)). Therefore, Bradshaw clearly knew that it had an obligation to make reasonable efforts to locate Coley, under

section 5 of the Remains Act (755 ILCS 65/5 (West 2014)), which it did not do. With regard to the Release and the Authorization Forms, Bradshaw knew that Lawrence had no authority to control the disposition of Raashanai's remains and, as such, knew that North's representations that he was entitled to control the disposition of the remains were to the contrary. As such, section 45 did not apply, because there was no reliance.

¶ 10    In reply, Bradshaw argued as follows. Coley failed to respond to North's affidavit with any counteraffidavit, and therefore the facts in North's affidavit must be taken as true. Further, even if the allegations in Coley's response were treated as true, that would not allow him to proceed on a negligence theory, as those facts would support a willful and wanton/reckless interference theory.

¶ 11    The trial court granted Bradshaw's motion to dismiss count III. The case then proceeded to a jury trial on counts I and II, with the jury finding in favor of Bradshaw on both counts.

¶ 12    Coley filed a posttrial motion to set aside the verdict and for a new trial. The motion mostly focused on what evidence was admitted at trial, with a single paragraph arguing that the trial court erred in dismissing count III. The motion claimed that count III would have had a lower burden of proof than the other counts and would not have required a showing of willful or wanton conduct, but it otherwise contained no explanation as to how the trial court erred. Coley's reply in support of his motion expanded somewhat on this point, arguing that the protections of section 45 did not apply, because Bradshaw knew that Coley had the greater right to control the disposition of the remains and as such was not entitled to rely on North's representations.

¶ 13    Coley timely appealed.

¶ 14                                II. ANALYSIS

¶ 15                              A. Standard of Review

¶ 16    Coley argues that the trial court erred when it granted Bradshaw's section 2-619(a)(9) motion to dismiss count III for negligent interference with the possession of his daughter's remains. Section 2-619(a)(9) of the Code allows a defendant to move to dismiss a claim where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). A section 2-619(a)(9) motion to dismiss allows for issues of law and easily proven issues of fact related to the affirmative matter to be disposed of early in litigation. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 30. In such a motion, the defendant is effectively saying, " 'Yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim.' " *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008). "Immunity from tort liability pursuant to statute is an affirmative matter properly raised in a section 2-619 motion to dismiss." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54. When considering a motion to dismiss pursuant to section 2-619, a court must accept as true all well-pleaded facts, as well as any reasonable inferences drawn from those facts, but not mere conclusions unsupported by specific facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. The court must also interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. The dismissal of a claim pursuant to section 2-619(a)(9) is reviewed *de novo*. *Id.*

¶ 17    This appeal centers on whether section 45 of the Remains Act shields Bradshaw from liability under Coley's negligence claim. This is an issue of statutory interpretation. The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Ryan v. Board of Trustees of the General Assembly Retirement System*, 236 Ill. 2d 315, 319 (2010). The best indication of the legislature's intent is the plain language of the statute itself. *Id.* In determining the plain meaning of statutory language, the court looks to the statute as a whole, the subject it

addresses, and the apparent intent of the legislature. *People v. Perry*, 224 Ill. 2d 312, 323 (2007).

Where the statutory language is clear and unambiguous, it must be applied without resorting to

additional tools of statutory interpretation. *Benzakry v. Patel*, 2017 IL App (3d) 160162, ¶ 74. The

construction of a statute is a question of law and is reviewed *de novo. Sperl v. Henry*, 2018 IL

123132, ¶ 23.

¶ 18                           B. The Disposition of Remains Act

¶ 19     Section 5 of the Remains Act (755 ILCS 65/5 (West 2014)) sets forth a list of individuals

who have the right to dispose of a decedent's remains, prioritizing such individuals in the following

order: any individual designated by the decedent in a written instrument, the executor of the

decedent's estate if they are carrying out instructions contained in the decedent's will, the

decedent's spouse, the decedent's adult children, the decedent's parents, adults in the next degrees

of kindred, and so on.

¶ 20     Section 20(b) of the Remains Act provides that "[i]f any person who would otherwise have

the right to control the disposition *** has been charged with first or second degree murder *** in

connection with the decedent's death and those charges are known to the funeral director ***, that

person's right to control is relinquished ***." *Id.* § 20(b).

¶ 21     There has been no prior case that examines section 45 of the Remains Act and as such this

is an issue of first impression. Section 45 of the Remains Act reads as follows:

> "There shall be no liability for a cemetery organization, a business operating a crematory
>
> or columbarium or both, a funeral director or an embalmer, or a funeral establishment that
>
> carries out the written directions of a decedent or the directions of any person who
>
> represents that the person is entitled to control the disposition of the decedent's remains.
>
> Nothing herein shall be intended or construed to reduce or eliminate liability for the gross

negligence or willful acts of any cemetery organization, business operating a crematory or columbarium or both, funeral director or embalmer, or funeral establishment." *Id.* § 45. Under the plain language of the statute, in order to be shielded from liability by section 45, a defendant must show the following: (1) the defendant is a cemetery organization, a business operating a crematory or columbarium or both, a funeral director or an embalmer, or a funeral establishment; (2) the defendant carried out the written directions of a decedent or the directions of any person who represents that the person is entitled to control the disposition of the decedent's remains; and (3) the claims against the defendant do not constitute gross negligence or willful acts.

¶ 22    The first element is not at issue in this appeal, as there is no dispute regarding Bradshaw's status as a funeral establishment. Likewise, the third element is not at issue in this case, as the dismissed claim did not allege gross negligence or willful conduct on the part of Bradshaw.

¶ 23                    C. Section 45 Does Not Require Reasonable Reliance

¶ 24    Coley asserts that, to claim the protection of section 45 of the Remains Act, a defendant must reasonably rely on the representations of the person claiming to be entitled to dispose of the decedent's remains and, likewise, that the language of section 20(b) creates a duty for a funeral director not to rely on the instructions of a person who the funeral director knows is charged with the murder of the decedent. Additionally, because the language of section 20(b) is more specific, it should control over the more general language of section 45. Bradshaw maintains that section 45's plain language is unambiguous and does not include anything about reliance and that, as such, Bradshaw was not required to demonstrate reasonable reliance to claim the statute's protections. Likewise, Bradshaw argues that Coley has stretched section 20(b) "well-beyond any reasonable interpretation" and that nothing in section 20(b) refers to section 45 or the liability of funeral establishments. In regard to section 20(b) being more specific than section 45, Bradshaw argues

that the sections address different subjects and that section 45 is far more specific regarding a funeral establishment's liability.

¶ 25     We disagree with Coley's interpretations of sections 20(b) and 45 of the Remains Act. "It is a cardinal rule of statutory construction that we cannot rewrite a statute, and depart from its plain language, by reading into it exceptions, limitations or conditions not expressed by the legislature." *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81 (2009). The plain language of section 45 contains no reference to reasonable reliance, and to interpret the statute as otherwise would be reading into it limitations that are not present in the text. Likewise, the plain language of section 20(b) does not place any duties or obligations on the funeral director, but rather makes the relinquishment of a killer's right to control the disposition of the remains conditional upon the funeral director's knowledge of the charge.

¶ 26          D. Reasonable Reliance Is Not Required to Avoid Absurd Outcomes

¶ 27     Coley argues that reading section 45 of the Remains Act as not requiring reasonable reliance on the part of the funeral establishment would lead to absurd outcomes. It would allow a funeral establishment to escape liability for knowingly allowing a murderer to dictate how the remains of their victim are to be disposed or to escape liability for carrying out the instructions of a five-year-old child. Bradshaw argues that section 45 limits a funeral establishment's liability for regular negligence but not for gross negligence or willful and wanton conduct, such as knowingly relying on a false representation.

¶ 28     While it is true that statutes should be interpreted to avoid absurd, unreasonable, or unjust results that the legislature could not have intended (*Palm v. Holocker*, 2018 IL 123152, ¶ 21), we do not find that reasonable reliance is necessary to avoid an absurd result. Section 45 already takes into account the type of knowing actions described by Coley, as it protects funeral establishments

from negligent conduct, but not gross negligence or willful conduct. Willful conduct can be either intentional or reckless. *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275 (1994). Willful conduct can include a "conscious disregard for the right of another to possess and preserve the body of [a] decedent for burial." *Rekosh v. Parks*, 316 Ill. App. 3d 58, 71 (2000). As such, a funeral establishment could be held liable in the scenarios described by Coley, since knowingly carrying out the directions of someone who is not authorized to determine how to dispose of the decedent's remains would constitute willful conduct outside the protection of section 45. Indeed, Coley was able to pursue his claim for willful and wanton interference at trial, based on the same set of facts as his negligence claim.

¶ 29        E. The Crematory Regulation Act Does Not Support Reasonable Reliance

¶ 30    Coley argues that the reasonable-reliance element of section 45 is also supported by section 20(a)(1)(N) of the Crematory Regulation Act, which states,

> "The cremation authorization form, other than pre-need cremation forms, shall also be signed by a funeral director or other representative of the funeral establishment that obtained the cremation authorization. That individual shall merely execute the cremation authorization form as a witness and shall not be responsible for any of the representations made by the authorizing agent, unless the individual has actual knowledge to the contrary."
> 410 ILCS 18/20(a)(1)(N) (West 2014).

Coley argues that the Crematory Regulation Act should be considered *in pari materia* with the Remains Act. As such, Coley argues, because the Crematory Regulation Act does not allow a funeral director to rely on representations made in a cremation authorization form that he or she knows to be false, neither should section 45. Bradshaw argues that the Crematory Regulation Act was not raised before the trial court and that Coley's argument should be deemed forfeited. Further,

Bradshaw maintains that nothing in section 20 references section 45 and that section 20 applies only to witnesses to the authorization form and not funeral establishments like Bradshaw.

¶ 31     While Coley did cite the Crematory Regulation Act in his amended complaint, he did not raise the argument that it must be considered *in pari materia* with the Remains Act in his response to Bradshaw's motion. However, forfeiture is a doctrine of administrative convenience, not one of jurisdiction, and the interests of maintaining a sound body of precedent can override forfeiture. *People v. Segoviano*, 189 Ill. 2d 228, 243 (2000). Accordingly, we will briefly discuss the Crematory Regulation Act. "Under the doctrine of *in pari materia*, two statutes dealing with the same subject will be considered with reference to one another to give them harmonious effect." *People v. McCarty*, 223 Ill. 2d 109, 133 (2006). We agree with Coley that section 20(a)(1)(N) of the Crematory Regulation Act and section 45 of the Remains Act address the same subject matter. However, we disagree that reading reasonable reliance into section 45 is necessary to harmonize the statutes. Section 20(a)(1)(N) makes a funeral director responsible for knowingly witnessing false representations in a cremation authorization form. Such conduct would be essentially the same as knowingly carrying out the directions of someone who is unauthorized to control the disposition of the decedent's remains, which, as we discussed, would constitute willful conduct. *Rekosh*, 316 Ill. App. 3d at 71.

¶ 32                F. The Slayer Statute Does Not Support Reasonable Reliance

¶ 33     Coley argues that section 2-6 of the Probate Act of 1975 (755 ILCS 5/2-6 (West 2014)) (commonly known as the Slayer Statute), which bars a person who intentionally and justifiably kills a decedent from receiving property from the decedent through inheritance laws or otherwise, should also be considered *in pari materia* with section 20(b) of the Remains Act. While the two statutes arguably address the same subject matter, *i.e.*, a limitation on the rights of a decedent's

killer, it is unclear what the Slayer Statute adds to our analysis or how it is in disharmony with section 45. Coley maintains that allowing Bradshaw to claim immunity under section 45 of the Remains Act would render the Slayer Statute and sections 5 and 20(b) of the Remains meaningless. We disagree. The legislature's decision to limit the liability of funeral establishments for violations under certain circumstances does not render the other statutes meaningless. Section 5 still sets forth who has priority with regard to the disposition of a decedent's remains, section 20(b) still revokes the rights of a decedent's killer to control the disposition of the remains, and the Slayer Statute still prevents a decedent's killer from benefitting from the decedent's death.

¶ 34                    G. *Cochran* Does Not Require Reasonable Reliance

¶ 35    Coley argues that the supreme court's recognition of negligent interference with the right to possess a corpse as a cause of action, in *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 24, applies to funeral homes. As such, he should be allowed to pursue his negligence claim against Bradshaw. Bradshaw notes that it never argued that section 45 was a *per se* bar to negligence claims but, rather, that it bars negligence claims only in instances where a funeral establishment carries out the instructions of a person representing that he or she is entitled to control of a decedent's remains. In *Cochran*, a morgue's security staff failed to properly tag and log the body of a deceased man and subsequently released the body to a funeral home for cremation before an autopsy could be performed. *Id.* ¶¶ 3-7. We agree with Coley that *Cochran* applies to funeral homes. However, we do not see how *Cochran* prevents Bradshaw from claiming the protections of section 45 in the instant case. We agree with Bradshaw that section 45 does not bar a funeral establishment from liability in all circumstances. Indeed, were a funeral establishment to negligently mix up two bodies and send the wrong one out for cremation, as occurred in *Cochran*, section 45 would not protect it.

¶ 36    H. Bradshaw Established the Necessary Facts to Support Its Motion to Dismiss

¶ 37    Coley argues that, because the amended complaint alleges that Bradshaw knew that Lawrence was charged with Raashanai's murder, it was reasonable to infer that Bradshaw knew that she had no right to control the disposition of Raashanai's remains. As such, it could not have reasonably relied on North's representations, since they were based on the transfer of Lawrence's rights to North. Coley further argues that the deposition of Richard Bradshaw demonstrates that he knew that Lawrence was in custody for Raashanai's murder, since he called the coroner's office to find out. Additionally, Coley argues that the deposition testimony shows that the coroner's office suggested to Richard Bradshaw that he prepare something transferring Lawrence's rights to North and that neither Lawrence nor North suggested this procedure. Further, it was Richard Bradshaw who gave North the Release and the Authorization Forms to complete, demonstrating that Bradshaw was in essence making the representations—that Lawrence and subsequently North had the right to dispose of Raashanai's remains—to itself. Bradshaw counters that its motion to dismiss was supported by an affidavit establishing that, when it facilitated the cremation of Raashanai's remains, it was carrying out the directions of a person representing that he had the right to control the disposition of those remains. Further, Coley failed to rebut that affidavit with a counteraffidavit or raise before the trial court the deposition testimony in his response to the motion. As such, Coley should be barred from raising the deposition testimony now. Bradshaw also maintains that Coley misrepresents the deposition testimony and that, while it knew that Lawrence was incarcerated, it did not know that Lawrence had been charged with Raashanai's murder.

¶ 38    With regard to the deposition testimony, arguments not raised before the trial court are forfeited on appeal. *IPF Recovery Co. v. Illinois Insurance Guarantee Fund*, 356 Ill. App. 3d 658,

666 (2005). Coley's failure to raise the deposition testimony in response to Bradshaw's motion to dismiss forfeits the issue on appeal.

¶ 39    We now move to the substance of Bradshaw's motion to dismiss. If the grounds for dismissal do not appear on the face of the pleading being attacked, a section 2-619 motion to dismiss must be supported by an affidavit. In support of its motion to dismiss, Bradshaw submitted an affidavit by North, in which he stated that he completed and returned the signed Release and the Authorization Forms. "When supporting affidavits have not been challenged or contradicted by counter-affidavits or other appropriate means, the facts stated therein are deemed admitted." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). However, on a section 2-619 motion, such an affidavit may not be used to challenge the factual allegations of the plaintiff's complaint, as that is the function of a motion for summary judgment under section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2018)). *Reynolds*, 2013 IL App (4th) 120139, ¶ 34. Coley submitted no counteraffidavit, but he did allege in his complaint that Bradshaw knew or should have known that Lawrence was charged with Raashanai's murder.

¶ 40    Upon consideration however, North's affidavit does not challenge the factual allegations of Coley's complaint, particularly the allegation that Bradshaw knew that Lawrence was charged with murder. Rather, the affidavit established the affirmative matter that North represented to Bradshaw that he was entitled to control the disposition of Raashanai's remains and that Bradshaw carried out his instructions. As such, Bradshaw established the elements required by section 45.

¶ 41    As to Coley's argument that the representations were not North's because Bradshaw instructed him to fill out the forms, he cites no case law in support of his claim, and at least one of the forms, the cremation authorization, is required by statute. See 410 ILCS 18/20 (West 2014). Accordingly, we reject that argument.

¶ 42                     I. Bradshaw Was Not Obligated to Locate Coley

¶ 43     Coley argues that count III of his amended complaint alleged three alternative theories of negligence: (1) Bradshaw failed to obtain a proper cremation form from Coley, *i.e.*, he did not use reasonable efforts to locate Coley; (2) Bradshaw secured and transmitted an invalid cremation form; and (3) Bradshaw transported and/or allowed the transportation of Raashanai's remains for cremation, without proper authorization from Coley. Coley maintains that, even if section 45 of the Remains Act bars recovery for Bradshaw's transmission of an invalid cremation form based on North's representations, it would not preclude recovery based on Bradshaw's failure to make reasonable efforts to locate Coley. In support of his contention that Bradshaw was obligated to make reasonable efforts to locate him, Coley cites section 5(5) of the Remains Act, which states, "if one of the surviving competent parents is absent, the remaining competent parent shall be vested with the rights and duties of this Act after reasonable efforts have been unsuccessful in locating the absent surviving competent parent." 755 ILCS 65/5(5) (West 2014). Coley also cites *Rekosh* for the proposition that "[a] funeral home's facilitation of a cremation that is not legally authorized, knowing that there are next of kin who are potentially unaware of the death or the arrangements and perhaps have objections, may reasonably be regarded as [extreme and outrageous conduct]." *Rekosh*, 316 Ill. App. 3d at 66.

¶ 44     While *Rekosh* found that the funeral home's facilitation of an unauthorized cremation could constitute extreme and outrageous conduct, it is silent as to what obligation if any the funeral home had to try to locate the next of kin. *Id.* As for section 5(5) of the Remains Act, it likewise does not say who is supposed to make reasonable efforts to locate the absent parent. However, sections 5(4) and 5(6) place the onus on the family to locate absent members. Section 5(4) provides that "less than one-half of the surviving adult children shall be vested with the rights and duties of this

Section if they have used reasonable efforts to notify all other surviving competent adult children of their instructions," and section 5(6) states that "less than the majority of surviving competent adult persons of the same degree of kindred shall be vested with the rights and duties of this Act if those persons have used reasonable efforts to notify all other surviving competent adult persons of the same degree of kindred of their instructions." 755 ILCS 65/5(4), (6) (West 2014). Additionally, the Crematory Regulation Act, which uses the same order of priority as section 5 of the Remains Act to determine who has the right to serve as an authorizing agent, places the obligation on the authorizing agent to make reasonable efforts to locate persons with a superior priority right. 410 ILCS 18/15, 20(a)(1)(E) (West 2014) ("In the event there is another living person who has a superior priority right to that of the authorizing agent, the form shall contain a representation that the authorizing agent has made all reasonable efforts to contact that person ***."). While we do not go so far as to state that there are no circumstances under which a funeral establishment might be obligated to make reasonable efforts to locate a decedent's next of kin, Coley has failed to demonstrate that under the circumstances of this case Bradshaw was obligated to make such efforts.

¶ 45                                III. CONCLUSION

¶ 46     Section 45 of the Remains Act entitled Bradshaw to immunity from Coley's negligence claim because Bradshaw sufficiently established that it carried out the instructions of North, who represented that he was entitled to control the disposition of Raashanai's remains. Coley's arguments that section 45 required Bradshaw to show that it reasonably relied on North's instructions are inconsistent with the statute's plain language. Accordingly, the judgment of the circuit court of Lake County is affirmed.

¶ 47     Affirmed.

---

**No. 2-19-0627**

---

| | |
|---|---|
| **Cite as:** | *Coley v. Bradshaw & Range Funeral Home, P.C.*, 2020 IL App (2d) 190627 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 17-L-480; the Hon. David P. Brodsky, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Raashan Coley, of Lisbon, Ohio, appellant *pro se*. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Timothy D. McMahon, J. Jason Coggins, and Michael D. Barnes, of Wiedner & McAuliffe, Ltd., of Chicago, for appellee. |

---