2023 IL App (2d) 220197
No. 2-22-0197
Opinion filed June 13, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MATTHEW KORNICK, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff and Counterdefendant-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 18-L-356 |
| | ) | |
| DRU GOODMAN, | ) | |
| | ) | Honorable |
| Defendant and Counterplaintiff-. | ) | Charles W. Smith, |
| Appellant, | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    Dru Goodman appeals the order of the circuit court of Lake County granting summary judgment in favor of Matthew Kornick on Goodman's counterclaim for intentional infliction of emotional distress based on Kornick's extreme and outrageous conduct knowingly directed at Goodman's minor child. For the following reasons, we reverse the trial court's judgment and remand for additional proceedings.

¶ 2                     I. BACKGROUND

¶ 3    The parties' adversarial relationship began in 2013 when Dru Goodman learned that Matthew Kornick, was having an affair with Goodman's wife of 17 years, Stacy. Upon learning

of the affair Goodman began having Stacy surveilled. From September 2013 to April 2016, Goodman spent more than $1.295 million to have someone follow, videotape, and photograph Stacy for approximately 12 hours per day at her home, on vacation, and in public places.

¶ 4     In March 2017, Stacy filed a verified petition for an order of protection against Goodman, pursuant to the Illinois Domestic Violence Act of 1986 (750 ILCS 60/1 *et seq.* (West 2016)). She sought to end Goodman's surveillance of her. Following a hearing, the trial court granted a two-year order of protection, finding that Goodman's surveillance of Stacy was obsessive and "completely and utterly inappropriate." In July 2017, Goodman and Stacy's marriage was dissolved.

¶ 5     In July 2018, Kornick brought against Goodman a claim for intrusion upon seclusion. Kornick's claim asserted that, because Goodman was extensively surveilling Stacy, he was surveilling Kornick as well. Two months later, Goodman filed a five-count counterclaim. The one count relevant to this appeal is a counterclaim for intentional infliction of emotional distress. In that claim, Goodman alleged that he had sustained severe emotional distress after viewing vile and vulgar text messages that Kornick had sent to Goodman's 13-year-old son C.S., who has features of autism spectrum disorder.

¶ 6     In January 2021, the trial court granted Kornick's motion to voluntarily dismiss his complaint, leaving Goodman's counterclaim as the sole pending matter.

¶ 7     On September 29, 2021, Kornick filed a motion for summary judgment. As to the claim for emotional distress, Kornick argued that there was no evidence that Kornick intended Goodman to suffer any emotional distress and there was no evidence that Goodman's reading of the text messages caused him any emotional distress. In support, he pointed to his own deposition testimony that he meant "no harm" with the texts that he sent and that they were part of a "friendly

relationship" that he had with C.S. Kornick testified that he stopped sending similar text messages "immediately" after Goodman expressed displeasure with the text messages.

¶ 8    Goodman's response to Kornick's motion for summary judgment included a declaration stating that, over a one-year period from 2017 to 2018, Kornick had repeatedly sent sexually explicit, vulgar, racist, sexist, and homophobic text messages to C.S. These messages were sent to a smartphone that Goodman had purchased for his son. Goodman stated that he became "physically sickened" upon discovering these texts, as he did not know how he could stop Kornick and protect his kids. Because his distress was so severe, he lost sleep and went to the Riverwoods Police Department, who involved the Illinois Department of Children and Family Services in the matter. Goodman consulted with two doctors and informed them that he was using prescription medications due to the emotional reactions he had to the text messages.

¶ 9    On May 4, 2022, following a hearing, the trial court granted summary judgment in favor of Kornick. As to the emotional distress count, the trial court found that Goodman could not maintain an action for emotional distress, because he could not establish that Kornick intended that he see the text messages and suffer emotional distress. Goodman thereafter filed a timely notice of appeal.

¶ 10                                II. ANALYSIS

¶ 11    On appeal, Goodman argues that the trial court erred in granting summary judgment in favor of Kornick, because the trial court's ruling ignored the familial relationship between Goodman and his son. Goodman insists that, as the father of the recipient of the outrageous conduct, he can recover for the emotional distress that Kornick caused him.

¶ 12    Summary judgment is appropriate where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is

no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). When reviewing a trial court's award or denial of summary judgment, we must construe the pleadings, depositions, admissions, exhibits, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). The standard of review for the entry of summary judgment is *de novo*. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997).

¶ 13    In determining the elements of the tort of intentional infliction of emotional distress, our courts have relied on the requirements set forth in the Restatement (Second) of Torts § 46 (1965) (hereinafter Restatement). *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶¶ 49-52. Those requirements provide that a party must allege facts to establish that (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended that his conduct should inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress, and (3) the defendant's conduct in fact caused severe emotional distress. *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994).

¶ 14    The first element of the tort—extreme and outrageous conduct—is not at issue in this case. The trial court found that a question of fact exists as to whether Kornick's conduct rose to the level of outrageousness necessary to support a claim for emotional distress. Kornick does not dispute that finding. We therefore consider only whether the other two elements are present. As to the second element, intent, we first address whether Kornick must have intended harm to Goodman himself. The Restatement recognizes that in some instances a plaintiff can bring an intentional infliction of emotional distress action based on conduct directed at a third person. Section 46(2) of the Restatement provides:

> "Where [outrageous] conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
>> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
>>
>> (b) to any other person who is present at the time, if such distress results in bodily harm." Restatement (Second) of Torts § 46(2), at 72 (1965).

See *Green v. Chicago Tribune. Co.*, 286 Ill. App. 3d 1, 13-14 (1996). Under this provision, Kornick can be held liable for his text messages to C.S. if he intentionally or recklessly caused severe emotional distress to Goodman and if Goodman was "present at the time" of Kornick's conduct.

¶ 15    Although the Restatement indicates that the person who is harmed by the outrageous conduct must be present when the conduct occurs, that provision is not always interpreted strictly. See *Christopher v. Harbury*, 536 U.S. 403, 420 n.19 (2002) ("there is room to argue for an exception to presence in some situations" when construing section 46); *Nancy P. v. D'Amato*, 517 N.E.2d 824, 826 (Mass. 1988) (family member does not need to be present when outrageous conduct occurs but rather must have "substantially contemporaneous knowledge of the outrageous conduct").

¶ 16    Goodman argues that this court's decision in *Rekosh v. Parks*, 316 Ill. App. 3d 58 (2000), *abrogated on other grounds, Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, should control the outcome of this case. In *Rekosh*, the decedent's adult sons sued their father's ex-wife and a funeral home, alleging intentional infliction of emotional distress. Specifically, the plaintiffs alleged that, after the decedent's death, the ex-wife met with agents of the funeral home, falsely stated that she was the decedent's spouse, and asked to have his remains cremated and given to her. The funeral home performed the cremation and gave the ashes to the ex-wife (who

dumped them in her backyard without notifying plaintiffs), despite not receiving a proper cremation authorization form. According to the allegations, the funeral home became aware that the ex-wife was not the decedent's current spouse and "witnessed" the signature of one of the sons on the authorization form even though the son was not there. *Rekosh*, 316 Ill. App. 3d at 61-63.

¶ 17 On the defendants' motion to dismiss for failure to state a claim, we concluded that the plaintiffs had stated a claim against both defendants for intentional infliction of emotional distress. *Id.* at 65 ("We believe that a reasonable person who enjoyed a warm, affectionate, and natural relationship with a parent would resent someone who, upon that parent's death, by means of a forgery, illegally cremated the body and disposed of the remains in a backyard without his knowledge or consent."). As to the funeral home, this court stated that "[a] funeral home's facilitation of a cremation that is not legally authorized, knowing that there are next of kin who are potentially unaware of the death or the arrangements and perhaps have objections, may reasonably be regarded" as outrageous conduct. *Id.* at 66. We also held that the plaintiffs had sufficiently pleaded intent as to the defendants. *Id.*

¶ 18 We note that in *Rekosh* we determined that the plaintiffs had stated an intentional infliction of emotional distress claim against the defendants for conduct that was not directed specifically at the plaintiffs. We also note that the plaintiffs were not in the presence of the allegedly outrageous conduct when it occurred. Indeed, the plaintiffs were not even aware at the time that the defendants had entered into the agreement to cremate the decedent's body. *Id.* at 64-66.

¶ 19 Based on *Rekosh* and the above authority, a plaintiff may maintain a cause of action for intentional infliction of emotional distress even if the alleged outrageous conduct was not directed specifically at the plaintiff. Further, a plaintiff need not be in the presence of the conduct when it occurs in order to assert that the conduct caused him emotional distress. Indeed, if the rule were

otherwise, it would sanction the conduct of those who act surreptitiously while punishing those who engage in the same conduct in the open. We see no reason why there should be such a distinction. See *Beal v. Broadard*, No. SUCV200205765C, 2005 WL 1009632, at *8 (Mass. Super. Ct. Feb. 4, 2005) (even though the "defendants never intended or directed any extreme or outrageous conduct towards [the parents of the 10-year-old sexual assault victim], and indeed, they certainly hoped that neither of her parents would ever learn of any such conduct, it is a question of fact for the jury whether the defendants acted recklessly and indifferently to the likely effect of their conduct on family members who were apt in time to learn of the outrageous conduct"). Moreover, relaxing the presence requirement here is appropriate because this case involves the dissemination of vile and disturbing text messages. These messages have the potential to last forever in the digital world, which thereby prolongs the period in which Goodman could experience emotional distress because of them.

¶ 20    Kornick insists that the facts in *Rekosh* are not applicable, because they were more egregious than those presented here. We believe, however, that whether the facts alleged here are sufficiently egregious to warrant damages is for the trier of the fact to resolve, not the court on a motion for summary judgment. *Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 2011 IL App (2d) 101257, ¶ 30.

¶ 21    We further note that the Appellate Court, First District, recently discussed the presence requirement for a claim of intentional infliction of emotional distress in *Lopez Colunga v. Advocate Health and Hospitals Corp.*, 2023 IL App (1st) 211386. There, the court determined that a defendant could not be liable for intentional infliction of emotional distress to a plaintiff who was "unknown [(to it)] *and* not present" when the allegedly outrageous conduct occurred. (Emphasis

in original). *Id.* ¶ 17. *Lopez Colunga* is distinguishable from the facts herein, as Kornick was undoubtedly aware of Goodman's existence.

¶ 22    Having found that a person can be held liable for conduct toward a third party, we consider whether Kornick has established that there is no genuine issue of fact about whether he intended or was reckless about the likelihood that his text messages to C.S. would cause Goodman severe emotional distress. We believe that questions of fact remain as to whether Kornick should have known that vile and disturbing text messages sent to Goodman's 13-year-old son would ultimately be seen by Goodman and cause Goodman emotional distress. As such, we reverse the trial court's order of summary judgment in Kornick's favor.

¶ 23    In so ruling, we reject Kornick's argument that Goodman cannot maintain an action against him because he did not intend Goodman to see the text messages. First, a party's intent when acting is a question of fact. *Id.* As summary judgment must be reserved for cases in which there is no question of material fact (735 ILCS 5/2-1005(c) (West 2020)), it generally should not be used when a party's intent is a central issue in the case (*Schroeder v. Winyard*, 375 Ill. App. 3d 358, 364 (2007)). Indeed, we have repeatedly held that " ' "summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent[,] and subjective feelings and reactions." ' " *Borchers*, 2011 IL App (2d) 101257, ¶ 30 (quoting *Farmers Automobile Insurance Ass'n v. Williams*, 321 Ill. App. 3d 310, 314 (2001), quoting *Raprager v. Allstate Insurance Co.*, 183 Ill. App. 3d 847, 859 (1989)).

¶ 24    Second, as set forth above, where outrageous conduct is directed to a person's family member, liability may attach if the actor's conduct was either intentional or reckless. Kornick does not acknowledge this standard but instead asserts that he did not intend for Goodman to see any text messages. This assertion does not support an order of summary judgment in Kornick's favor.

Instead, it raises a question of fact for the jury to resolve as to whether his actions were intentional or so reckless as to warrant the imposition of liability. *Id.*

¶ 25    As an alternative basis to affirm the trial court's judgment, Kornick argues that Goodman failed to establish the third element of the tort—that he suffered any distress because of seeing the text messages. For this element to be met, the distress caused by the outrageous conduct, when measured by its intensity and duration, must be so severe that no reasonable person could be expected to endure it. Restatement (Second) of Torts § 46 cmt. d, at 73 & cmt. j, at 77-78 (1965); *Schweihs*, 2016 IL 120041, ¶ 51; *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 64. Given this high standard, a complaint alleging intentional infliction of emotional distress must be more specific and detailed than normally required in pleading a tort action. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999).

¶ 26    Here, Goodman stated in his declaration in opposition to Kornick's motion for summary judgment that viewing the text messages physically sickened him and made him frantic about how he could protect his children from Kornick. He then began taking prescription medications due to his emotional reaction to reading the messages, and he consulted with two doctors. These assertions require consideration of Goodman's subjective feelings and reactions and if they were correspondent to the conduct that was directed to his son. This is a question to be resolved by the trier of fact, not by the court on a motion for summary judgment. *Borchers*, 2011 IL App (2d) 101257, ¶ 30.

¶ 27    We further note that, although "severe distress must be proved" for a claim of intentional infliction of emotional distress, "in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." (Internal quotation marks omitted.) *Honaker v. Smith*, 256 F.3d 477, 496 (7th Cir. 2001) (noting that Illinois courts

have tended to merge the conduct and distress elements of intentional infliction of emotional distress such that the more severe the conduct, the less proof of severe distress required); see also *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 276-77 (2003) ("severe emotional distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed" (citing Restatement (Second) of Torts § 46 cmt. j, at 77-78 (1965))); *A.J. by Julka v. Butler Illinois School District #53*, No. 17 C 2849, 2020 WL 3960444, at *4-5 (N.D. Ill. July 13, 2020), *aff'd sub nom. Julka v. Board of Education of Butler School District #53*, No. 20-2531, 2021 WL 5563721 (7th Cir. Nov. 29, 2021).

¶ 28    In *A.J.*, the Butler School Board accused two children of cheating. *A.J.*, 2020 WL 396044, at *1. Their father sued, asserting that the school board's and its president's baseless accusations had caused him emotional distress. *Id.* at *2. Following a trial, the jury found for the father on his claim for intentional infliction of emotional distress. *Id.* The district court denied the defendants' posttrial motion, explaining:

> "Some of the defendants' conduct—public accusations of cheating and prohibition from participating in any academic competition in the school district—was directed to [the father's] children, A.J. and R.J., who had heightened susceptibility to distress due to their age. Though the claim at issue was brought by [the father], any reasonable person in the defendants' position would understand that an attack on one's children by a person in a position of authority—particularly a public accusation of cheating—would be highly likely to cause the children's parents severe distress. With this in mind, the jury could have reasonably concluded that [the school board president] and the school board, who knew that their sanctions and public statements targeted [the father's] minor children, acted with

knowledge of 'at least a high probability' that their conduct would cause distress." *Id.* at *4.

¶ 29 The above cases all stand for the proposition that the more outrageous the conduct, the more likely one is to suffer severe emotional distress. This is particularly true if the outrageous conduct is directed towards one's child. See *id.* We believe that this is even more true if the child has autistic features. Based on the allegations in the complaint detailing the outrageous conduct directed towards Goodman's 13-year-old autistic child, it is up to the jury to determine whether that conduct caused Goodman severe emotional distress.

¶ 30                                              III. CONCLUSION

¶ 31 For the foregoing reasons, the judgment of the circuit court of Lake County is reversed and the cause is remanded for additional proceedings.

¶ 32 Reversed and remanded.

---

*Kornick v. Goodman*, **2023 IL App (2d) 220197**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 18-L-356; the Hon. Charles W. Smith, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Neil M. Rosenbaum, Damon E. Dunn, and Bryan G. Schatz, of Funkhouser Vegosen Liebman & Dunn Ltd., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Daniel F. Konicek, Peter L. LeGrand, and Amanda J. Hamilton, of Konicek & Dillon, P.C., of Geneva, for appellee. |

---