2026 IL App (1st) 250909-U

FIRST DIVISION
March 31, 2026

No. 1-25-0909

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PETER PANOS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 22 L 011340 |
| PETROS DIAKATOS, PETER LOBA, GO! | ) | |
| GROCER MANAGEMENT, INC., PAUL | ) | |
| STELLATOS, and GREGORY STELLATOS, | ) | |
| | ) | Honorable Daniel J. Kubasiak, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We reverse the order granting summary judgment to defendants. The moving defendants failed to demonstrate that their right to a judgment of no liability was clear and free from doubt. Plaintiff provided evidence in support of each element of his causes of action raised in this appeal and defendants failed to show that there was no genuine issue of material fact entitling them to judgment as a matter of law.

¶ 2    Plaintiff filed this case against two of his former business partners after their small grocery store businesses failed. Plaintiff also asserted claims against the company from whom he and his partners essentially acted as franchisees, as well as the two individuals who founded that company. The trial court granted summary judgment to the company and its two principals

against claims that they were liable for conversion, tortious interferences with business relationships, and civil conspiracy. Plaintiff now appeals the order in which the trial court found that those defendants were entitled to judgment as a matter of law. For the following reasons, we reverse and remand the matter for further proceedings.

¶ 3                                              BACKGROUND

¶ 4      Plaintiff Peter Panos and defendant Petros Diakatos, who are brothers-in-law, went into business together to open some small neighborhood grocery stores. Defendant Paul Stellatos (Stellatos) and his brother Gregory Stellatos are the founders of the Go Grocer Brands. Go Grocer owns and operates its own grocery stores, and it also enters into franchise-type licensing agreements where it allows third parties to open stores using the Go Grocer name and trademarks in exchange for a fee. When Go Grocer licenses its name to third parties, it provides consulting services and marketing for the third-party stores.

¶ 5      In 2019, Panos and Diakatos entered into two licensing agreements to open two Go Grocer stores in Chicago: one at 5441 N. East River Road and one at 5419 N. Sheridan Road. Panos and Diakatos formed two separate corporations which owned these stores, and Panos and Diakatos each held 50% equity in the companies. The licensing agreements Panos and Diakatos executed for the Go Grocer stores are for 10-year terms, and Panos and Diakatos agreed to pay 3% of their gross revenue to defendant Go Grocer Management, Inc. Under the licensing agreements, Panos and Diakatos were also required to purchase certain prepackaged fruits, premade sandwiches and wraps, and other items from Go Grocer Management, Inc.

¶ 6      Plaintiff Panos contributed all the startup capital for the River Road location by using $150,000 sourced from his mother. According to Panos, the startup capital was a loan, which was memorialized in writing, and the corporation was repaying the loan in $2,000 monthly

payments. Defendants argue that the $150,000 from Panos's mother was a gift and the corporations had no legal obligation to repay the money. For the other location, the Sheridan Road store, Panos and Diakatos obtained a Small Business Administration loan using asset information from Panos and his mother. Defendant Diakatos had limited assets at the time, so his information was not submitted to the SBA. Diakatos did not contribute any of his own funds upfront for either of the stores. Nonetheless, the parties agreed to split net profits 50/50. Both Panos and Diakatos were to receive salaries from the companies, and both men provided labor to run the companies, with Panos managing and operating one location and Diakatos managing and operating the other.

¶ 7     In January 2021, Panos and Diakatos decided to open a third Go Grocer location at 1323 West Armitage Ave. Panos and Diakatos signed a lease for the property and began construction to convert it into a grocery store. Stellatos oversaw the construction of the store space for the Armitage location by lining up the subcontractors and sequencing the installation. During the course of the construction, Panos and Diakatos began to become short on funds to complete the build-out and open the store.

¶ 8     At the same time as Panos and Diakatos were trying to open the Armitage location, another individual, defendant Peter Loba, was looking to open his second Go Grocer store. Loba had already secured an SBA loan to provide funding for opening the new store. With the SBA loan proceeds, Loba had purchased most of the equipment required to run a Go Grocer store, but he could not receive the necessary approvals from the City of Chicago to open a store at his planned location. Loba secured the SBA loan with a personal guaranty that was secured by the equipment and by a mortgage on his personal home.

¶ 9    Stellatos, as a result of his involvement in the planned Armitage store and because of his role as a principal of Go Grocer, was aware of Panos and Diakatos's financial issues and Loba's issue with lacking a suitable location, so he introduced Loba to Panos and Diakatos. The idea was that Loba would bring his loan proceeds and equipment to Panos and Diakatos's store location so that the parties could provide the missing piece that the other needed to successfully open a store. For this Armitage location, ownership of the business was apportioned 60% to Loba, 20% to Panos, and 20% to Diakatos, based on Loba providing more of the financial backing. Net profits for the Armitage store were to be apportioned *pro rata* to the ownership interests: 60% to Loba, 20% to Panos, and 20% to Diakatos. There was no written partnership agreement.

¶ 10    Beginning in October 2021, Panos ceased receiving distributions from the River Road and Sheridan locations. Diakatos, however, continued to receive payouts from these locations. Panos also claims that Diakatos began to engage in other malicious conduct against him, including locking him out of the stores, shutting him out of the business accounts, and refusing to provide him with an accounting of the stores' financial information.

¶ 11    Beginning in March 2022, Stellatos began to offer advice by email to Panos, Loba, and Diakatos about steps they might need to take to save the business at the Armitage location. Stellatos suggested removing the store equipment to another location or to open another location with the equipment from the Armitage store in order to have a "clean start."

¶ 12    In April 2022, the $2,000 per month loan repayments for the $150,000 provided by Panos's mother for the River Road store ceased. Email communications between Panos and Diakatos show that the $2,000 amounts previously sent to Panos for loan repayments were then being redirected to the Armitage store. According to Panos's interpretation of Diakatos's

deposition testimony in this case, Diakatos stated that he began redirecting the loan payment money to the Armitage location at the direction of Stellatos. Stellatos disagrees with this interpretation of the testimony and asserts that Diakatos never testified that his decision to redirect the loan payments was done on the instruction of Stellatos. However, security camera footage from April 8, 2022, at the Sheridan location captured Stellatos telling Diakatos what to write in an email message to Panos. Stellatos told Diakatos to write that Panos's return is not viable and the partnership "is and has been over." Panos received an email the following day virtually verbatim to Stellatos's recorded instructions.

¶ 13    In July 2022, Loba removed the equipment from the Armitage store to a warehouse owned by the Go Grocer principals. The equipment included coolers, freezers, shelves, signage, lights, and cash registers. Although Panos was copied on the emails where the proposals for addressing the problems at the Armitage store were discussed, he claims that he did not authorize or agree to the course of action that was taken. The Armitage store closed permanently in August 2022.

¶ 14    Panos claims that Loba has unlawfully retained hundreds of thousands of dollars' worth of equipment from the store. Defendants, however, point out that the equipment for the Armitage location was collateral for the SBA loan Loba received. According to defendants, when the Armitage location failed and was closed, Loba was required to take the equipment into his personal possession according to the terms of the SBA loan. Ultimately, the SBA loan entered default, and the issuing bank took possession of the equipment where it was sold to satisfy a portion of the outstanding loan balance. Even after the equipment was sold, however, there was a deficiency, and the bank that issued the loan foreclosed on Loba's personal residence which he had pledged as additional collateral.

¶ 15 On December 21, 2022, Panos filed this case against Diakatos, Loba, the Stellatos brothers, and Go Grocer Management, Inc. The complaint contains 16 claims including claims sounding in breach of contract, breach of fiduciary duty, constructive fraud, fraud, unjust enrichment, conversion, tortious interference with business relations, and civil conspiracy. The complaint also requests an equitable accounting. Diakatos and Loba moved to dismiss the complaint, but the trial court denied the motions to dismiss in their entirety.

¶ 16 Panos moved for summary judgment on the claims in his complaint. Stellatos, his brother Gregory, and Go Grocer Management, Inc. (the Stellatos defendants) moved for summary judgment on the claims directed against them. Panos's claims against the Stellatos defendants were for conversion, tortious interference with business relations, and civil conspiracy. In a single order, the trial court ruled on both motions for summary judgment. The trial court denied Panos's motion for summary judgment in its entirety. The trial court granted summary judgment in favor of the Stellatos defendants on Panos's claims against them. Thus, the case was set to go forward on Panos's claims against Diakatos and Loba.

¶ 17 Panos sought leave to file an amended complaint to attempt to bring his claims in another way. The trial court denied Panos leave to file the amended complaint, and the court reset the trial date that was quickly approaching.

¶ 18 A few days before a final pretrial conference was set to take place, Panos filed a motion to voluntarily dismiss his claims against Diakatos and Loba. The trial court granted Panos's motion for a voluntary dismissal, and it struck all future dates, indicating that "the case is closed." Panos filed a notice of appeal indicating that he was appealing the summary judgment rulings in favor of the Stellatos defendants.

¶ 19                                ANALYSIS

¶ 20     Plaintiff Peter Panos appeals an order entered by the trial court granting summary judgment to defendants Paul Stellatos, Gregory Stellatos, and Go Grocer Management, Inc. on the claims asserted against them. We have jurisdiction to hear this case as an appeal from a final judgment under Supreme Court Rule 303. Although only the Stellatos defendants were granted summary judgment, plaintiff took a nonsuit against all the remaining defendants and as a result the judgment in the case is final and appealable.

¶ 21     Panos does not develop any argument on appeal for the reversal of the trial court's order granting summary judgment to the Stellatos defendants on his claim for conversion. Accordingly, we conclude Panos has waived any argument regarding the reinstatement of his conversion claim, and we do not address the claim any further. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 65.

¶ 22     In addition to the aforementioned conversion claim, Panos asserted claims against the Stellatos defendants for tortious interference with business relations (count XV), and civil conspiracy (count XVI).

¶ 23     Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2022); *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. Summary judgment is encouraged as an expeditious manner of disposing of a lawsuit, but it should only be utilized when a party's right to a judgment is clear and free from doubt. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review the trial court's decision to grant summary

judgment *de novo. Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8.

¶ 24    The trial court found Panos to have business relationships and business expectancies but nonetheless found that there was no evidence that any of the defendants had interfered with any of those business expectancies. The trial court further found that Panos failed to establish a business relationship that was interfered with by "any defendants" and that no facts supported Panos's assertion that a business relationship was interfered with by the Stellatos defendants. Accordingly, we turn to address the propriety of the trial court's ruling that there were no facts to support a claim that the Stellatos defendants interfered with Panos's business relationships.

¶ 25    To establish a claim for tortious interference with a business relationship a plaintiff must prove: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy by the interferer, (3) an intentional interference that induces or causes a breach or termination of the relationship, and (4) damage. *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App. 3d 359, 362 (1973).

¶ 26    The Stellatos defendants argue that Panos's claim for tortious interference (count XV) is based solely on the premise that the Stellatos defendants "assisted Loba in taking hundreds of thousands of dollars of equipment from the Armitage Avenue Store" that belonged to the partnership. Panos pled in the complaint that he had a right to continue to share in the use of that equipment. He concluded his tortious interference claim in his complaint by alleging that the Stellatos defendants' conduct in removing the equipment from the Armitage store was intentional and willful, and it caused him damage.

¶ 27     The Stellatos defendants argue in their brief on appeal that Panos only alleged interference with regard to the equipment; not with partnership profits, management rights, distributions, or access to books and records.

¶ 28     Panos argues that the Stellatos defendants' characterization of his claim ignores the fact that allegations in Count XV expressly incorporate all prior allegations. Included in those incorporated allegations, Panos contends, he alleged that the Stellatos defendants knowingly assisted in excluding him from partnership operations, cut off his salary and distributions, deprived him of access to records, and dismantled his ongoing participation in the enterprise. Panos contends that the record contains substantial evidence of the Stellatos defendants' interference in his business relationship: the cessation of loan repayments, the withholding of distributions for two years, excluding him from business decisions, and removal of partnership equipment, all at the direction of the Stellatos defendants.

¶ 29     Indeed, the allegations with regard to the Stellatos defendants' alleged interference with Panos's partnership rights, the loan repayments, and the exclusion of Panos from important management decisions are all pled in the complaint. Courts considering summary judgment motions are required to consider the pleadings on file. *Golden v. Marshall Field & Co.*, 134 Ill. App. 3d 100, 101 (1985). The Stellatos defendants are correct that Panos does not set forth those allegations separately in his tortious interference claim in his complaint, and we agree that the claim could have been more artfully pled to include those allegations, but the allegations are nonetheless expressly incorporated. The allegations were also addressed in the summary judgment briefing, which clearly demonstrates that Panos did not intend for his tortious interference claim to solely concern the equipment at the Armitage Avenue location.

¶ 30     Illinois courts do not require a plaintiff to restate every fact in each count of a complaint. We consider all properly incorporated allegations when evaluating the sufficiency of the pleading. See Ill. S. Ct. R. 134 (West 2022) ("If facts are adequately stated in one part of a pleading, or in any one pleading, they need not be repeated elsewhere in the pleading, or in the pleadings, and may be incorporated by reference elsewhere or in other pleadings."). Here, the incorporation of the allegations made elsewhere in the complaint into Count XV was sufficient, and we treat the incorporated allegations as if they were directly written into Panos's claim for tortious interference. *Id*. When deciding a summary judgment motion, in addition to the evidence, we construe the pleadings strictly against the movant and liberally in favor of the nonmovant. *Willett v. Cessna Aircraft Co.,* 366 Ill. App. 3d 360, 368 (2006). As such, defendants' burden was to demonstrate that there was no issue of material fact with regard to their alleged tortious interference with Panos's business relationships as a whole, not solely with regard to the equipment.

¶ 31     In their motion for summary judgment, which was filed the same day as Panos's motion for summary judgment, the Stellatos defendants argued that Panos failed to state that he had a valid business expectancy that they could have interfered with. In particular, the Stellatos defendants argued that Panos failed to state that he had a business expectancy to use the equipment, other than the conclusory allegation he made to that effect in his complaint. The Stellatos defendants went on to argue that defendant had no damages from the removal of the business equipment as a result of the equipment being subject to a secured interest by the bank.

¶ 32     In response to the Stellatos defendants' motion for summary judgment, Panos initially focused on the defendants' actions with regard to the equipment. Panos contended in his response that he disputes the movants' assertion that they did not formulate, direct, conspire, or

assist Panos's business partners in seizing and removing all the equipment from the Armitage Avenue location. Panos argued that, instead, the uncontroverted evidence showed that the Stellatos defendants masterminded the plan to remove the equipment months before the equipment was even taken. Panos cited to emails by the Stellatos defendants in which they discussed potentially moving the equipment as early as March and April 2022 even though the equipment was not removed until July 2022.

¶ 33    Eventually, however, Panos points out in his response to the Stellatos defendants' motion for summary judgment that his mother loaned the business $150,000 that was supposed to be repaid in increments of $2,000 per month. Panos explains that Diakatos refused to authorize any more loan payments starting in April 2022—a decision Diakatos testified he made in concert with the Stellatos defendants. Specifically addressing Count XV for tortious interference, Panos argues that Diakatos refused to repay the loan based on the advice and direction he received from the Stellatos defendants. Panos argued that this evidence, at a minimum, creates an issue of material fact as to whether the Stellatos defendants induced Diakatos to intentionally breach his contractual and partnership obligations.

¶ 34    In his own motion for summary judgment, Panos argued that Diakatos refused to repay the loan he made to the business "at the instruction of" the Stellatos defendants. Panos pointed to Diakatos's deposition testimony in which Diakatos testified that he refused to repay the loan based on instructions from the Stellatos defendants. Panos further argued in his motion for summary judgment that the Stellatos defendants "interfered with [Panos's] partnerships with Diakatos and Loba by assisting Diakatos and Loba in diverting partnership funds and assets from [Panos]."

¶ 35    In response to Panos's motion for summary judgment, the Stellatos defendants acknowledge that Panos argues that the Stellatos defendants "interfered with [Panos's] partnerships by assisting Diakatos and Loba in diverting partnership funds and assets from [Panos]." The Stellatos defendants, however, point out that Count XV for tortious interference only discusses the equipment and does not address the diversion of funds.

¶ 36    In his reply in support of his motion for summary judgment, Panos made clear that his claims against the Stellatos defendants were not limited to the equipment. Panos stated in his reply that "Defendants assert [Panos's] claims against them are limited only to the Armitage Avenue Store. This is false. [Panos] establishes in his [motion for summary judgment] that Defendants formulated, directed, conspired, and assisted Defendant Petros Diakatos to not repay the $150,000 loan that Panos's mom [] made to the partnership." Panos further argued that "it is undisputed that Paul Stellatos conspired with Defendants in the breakdown and end of the parties' partnerships." Panos points to the security camera footage of Stellatos instructing Diakatos to send the email to Panos in which Diakatos wrote that Panos's return is no longer viable and the partnership is and has been over.

¶ 37    The trial court did not address Panos's arguments about the Stellatos defendants interfering in his partnerships in either addressing Panos's motion for summary judgment or addressing the Stellatos defendants' motion for summary judgment. Instead, in both instances, the trial court made a blanket statement that "Panos fails to establish a business relationship or business expectancy" that was interfered with by defendants and that "no facts support this assertion." At the summary judgment stage, however, Panos was not required to *establish* a business expectancy or prove interference, he was only required to provide some evidence to support his claim. See *Kinzer on Behalf of City of Chicago v. Fidelity & Deposit Co. of*

*Maryland*, 273 Ill. App. 3d 211, 216 (1995) ("The non-movant is not required to prove his claim or defense at the summary judgment stage but must present some evidence to raise factual disputes regarding one or more elements of that claim or defense.").

¶ 38    The record here, when viewed in a light most favorable to Panos, contains evidence supporting each of the elements necessary for a claim for tortious interference. As stated above, to establish a claim for tortious interference with a business relationship, a plaintiff must prove: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy by the interferer, (3) an intentional interference that induces or causes a breach or termination of the relationship, and (4) damage. *City of Rock Falls*, 13 Ill. App. 3d at 362.

¶ 39    Panos has provided some evidence that Stellatos directed Diakatos to end the partnership for the River Road and Sheridan stores, depriving Panos of distributions and profits from these stores; urged Loba to remove partnership equipment from the Armitage store; and told Diakatos to halt repayment of the $150,000 loan. Panos has submitted video recordings, emails, and deposition testimony showing that the Stellatos defendants knew of Panos's partnership rights with Diakatos and Loba, that they coordinated with Diakatos and Loba to cut off Panos's profits, distributions, and loan repayments, and that they participated in the decisions to exclude Panos from management of the partnerships.

¶ 40    The Stellatos defendants' response on appeal is predicated entirely on the premise that Panos's claim for tortious interference only concerns the equipment for the Armitage store location. The record, however, contains evidence that the Stellatos defendants knowingly assisted Diakatos and Loba with excluding Panos from business operations, with cutting off loan payments and distributions to Panos, and with depriving Panos of access to business records.

When the complaint is read as a whole, and when the evidence is viewed in a light most favorable to Panos, it is clear that he has raised improprieties—beyond those concerning equipment—with how the Stellatos defendants influenced decisionmaking by the other defendants to Panos's detriment and in derogation of their business relationship.

¶ 41     Summary judgment should not be granted unless it is clear that the moving party is truly entitled to it. *Brooks v. City of Peoria*, 305 Ill. App. 3d 806, 808 (1999). It is a drastic remedy which results in the disposition of a case without a trial and, as such, should not be granted unless the right of the movant is free from doubt. *Rosenberger v. United Community Bancshares, Inc.*, 2017 IL App (1st) 161102, ¶ 22. On a motion for summary judgment, we construe the record strictly against the movant and liberally in favor of the nonmoving party. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. Applying these principles, we conclude that the Stellatos defendants were not entitled to summary judgment on Panos's claim for tortious interference.

¶ 42     Insofar as Panos's claim for tortious interference relates to the equipment from the Armitage store, the Stellatos defendants argue that they are entitled to a judgment of no liability. The trial court did not specifically address the issue of the equipment in its ruling on the tortious interference issue or explain why the removal of the equipment could not support a claim as a matter of law. The trial court merely set forth the parties' arguments and then explained that Panos failed to establish a business relationship or business expectancy that defendants interfered with. As set forth above, Panos has set forth evidence of a business relationship or business expectancy that the Stellatos defendants arguably interfered with.

¶ 43     The record does not make clear that Panos's claim regarding the business equipment is subject to defeat as a matter of law. The Stellatos defendants contend that Panos cannot establish a valid business expectancy or damages—two elements required to sustain his claim for tortious

interference. However, there was no written partnership agreement between Panos, Diakatos, and Loba for the Armitage Avenue store. As such, there is no clear contractual or legal provision that precludes Panos from potentially suffering cognizable harm if the property was misappropriated. Moreover, it is unclear what the business protocol was to be in the event of the store failing, and Panos and Loba have provided differing accounts as to what their rights and obligations were under their understanding of the partnership agreement, particularly with regard to the business equipment. For example, Panos asserts that Loba's buy-in to the business was the equipment. Meanwhile, Panos and Diakatos's buy-in was paying for the construction done at the premises to prepare it to be used as a grocery store. Thus, according to Panos's reasoning, Loba left the partnership with the only valuable asset. Panos asserts that because the equipment value is approximately $100,000 and the equipment is partnership property, his 20% interest in the property means he is entitled to approximately $20,000 for the equipment.

¶ 44    Because the equipment became property of the company, and not Loba's solely owned property (see 805 ILCS 206/203 (West 2022)), Panos claims Loba had no right to unilaterally act to remove the property or otherwise decide what to do with the property without consent from the other partners. However, Loba allegedly removed the equipment and relocated it to another Stellatos-owned location. There is evidence that the Stellatos defendants instructed Loba to take the equipment from the Armitage store in order to open another location, and the equipment was then moved without Panos's consent. Panos contends that Loba's reasons for removing the equipment, and his reasons for doing it at that specific time and to that specific location present questions of intent and, thus, questions of fact unsuitable for summary judgment. See *Kornick v. Goodman*, 2023 IL App (2d) 220197, ¶ 23 (a party's intent when acting is a question of fact). As

summary judgment must be reserved for cases in which there is no question of material fact, it generally should not be granted when a party's intent is a central issue in the case. *Id.*

¶ 45    Panos suggests that it is presently unclear whether the equipment was removed to genuinely satisfy lender obligations or whether it was done to benefit other parties to his own detriment. Without finding that Loba's actions with regard to the equipment indeed support a tortious interference claim, we nevertheless conclude that the Stellatos defendants have failed to show that their right to a judgment of no liability on this issue is clear and free from doubt. Accordingly, we reverse the trial court's ruling granting summary judgment to the Stellatos defendants on Panos's claim against them for tortious interference with business relations.

¶ 46    After the trial court granted summary judgment to the Stellatos defendants for tortious interference, it found that there were no claims that could support a civil conspiracy, so the trial court granted judgment in favor of the Stellatos defendants on that claim as well. On appeal, the Stellatos defendants argue that the trial court's ruling granting them summary judgment on the civil conspiracy claim should be affirmed for the sole reason that they are entitled to judgment as a matter of law on the underlying claims. Indeed, a cause of action for civil conspiracy exists only if one of the parties to the agreement commits a tort in furtherance of the agreement. *Lewis v. Lead Industries Association*, 2020 IL 124107, ¶ 54.

¶ 47    However, because we find that Panos is entitled to reversal on the trial court's ruling granting summary judgment against him on the tortious interference claim, the basis for granting summary judgment on the civil conspiracy claim is no longer present. See *Clarage v. Kuzma*, 342 Ill. App. 3d 573, 583 (2003) ("Since we have found improper the dismissal of the plaintiff's claims for defamation, interference with a business expectancy and interference with contract to

be improper, plaintiff's claim for civil conspiracy must be reinstated. The issue of the viability of that claim on its merits was not addressed by the trial court and is not before us.").

¶ 48    In order to prevail on a theory of civil conspiracy, a plaintiff must plead and prove (1) the existence of an agreement between two or more persons (2) to participate in an unlawful act or a lawful act in an unlawful manner, (3) that an overt act was performed by one of the parties pursuant to and in furtherance of a common scheme, and (4) an injury caused by the unlawful overt act. *Lewis*, 2020 IL 124107, ¶ 20. Panos has presented some evidence in support of each element for a claim of civil conspiracy. Panos, therefore, is entitled to reversal of the ruling granting summary judgment against him on his civil conspiracy claim.

¶ 49                                    CONCLUSION

¶ 50    For the foregoing reasons, we reverse, and we remand the case to the circuit court for further proceedings. Count XV (tortious interference with business relations) and Count XVI (civil conspiracy) are reinstated.

¶ 51    Reversed and remanded.